THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

WAYNE ALAN BURTON,

Petitioner,

v.

STATE OF WASHINGTON,

Respondent.

CASE NO. C15-5424 BHS-JRC

REPORT AND RECOMMENDATION

NOTED FOR:  August 19, 2016

The District Court has referred this petition for a writ of habeas corpus to United States Magistrate Judge J. Richard Creatura. The Court's authority for the referral is 28 U.S.C. §636(b)(1)(A) and (B), and local Magistrate Judge Rules MJR3 and MJR4. Petitioner seeks relief from a state conviction, thus, the petition is filed pursuant to 28 U.S.C. § 2254.

Petitioner Wayne Alan Burton seeks § 2254 habeas relief from his convictions by jury verdict of two counts of first-degree incest-domestic violence and one count of second degree incest-domestic violence. Dkt. 6.  Petitioner raises eight grounds for relief: (1) prosecutorial misconduct; (2) ineffective assistance of defense counsel; (3) denial of

1   public trial; (4) ineffective assistance of appellate counsel; (5) trial court error; (6) trial

2   court abuse of discretion based on an exceptional sentence of 240 months imposed; (7)

3   insufficient evidence; and (8) cumulative error.

4         Respondent argues that petitioner failed to properly exhaust a number of his

5   claims because he failed to invoke one full round of the state's appellate review process.

6   Respondent argues that even though petitioner raised some of these claims on federal

7   grounds in one state court, he did not do so in both courts.  Also, respondent argues that

8   although petitioner raised some of these claims on state law grounds, he did not raise

9   them on federal grounds. Respondent further argues that the unexhausted claims are time-

10   barred in state court and that the claims which are exhausted, fail on the merits based on a

11   determination that the state court decisions were proper.  Dkt. 19.  Petitioner did not file a

12   reply and fails to show that the rulings of the state court for the exhausted claims violated

13   clearly established federal law.

14         Respondent finally argues that because petitioner does not demonstrate cause and

15   prejudice or a fundamental miscarriage of justice, he is procedurally barred from filing

16   another collateral challenge. This Court agrees.

17         Therefore, the Court recommends that the petition be denied in its entirety. The

18   Court also recommends denying the issuance of a certificate of appealability.

19                       **PROCEDURAL HISTORY**

20         The petition was filed on June 29, 2015.  Dkt. 3.  An amended petition was filed

21   on August 13, 2015.  Dkt. 6.  Respondent answered the amended petition on May 9,

22   2016.  Dkt. 19.

23

24

REPORT AND RECOMMENDATION - 2

1

### BASIS FOR CUSTODY AND FACTS

2       The Washington Court of Appeals summarized the facts in petitioner's case as

3   follows:

4           In 2010, Burton's stepdaughter MBOW alleged that Burton had sexually
            abused her beginning when she was 15 or 16. MBOW was 18 years old
5           when she made the allegations.

6           Police executed a search warrant on Burton's home. During the search, the
            police seized four bathrobes. DNA (deoxyribonucleic acid) analysis
7           revealed a mix of Burton and MBOW's DNA on one of the robes. The
            police also seized marijuana pipes from Burton's bedroom.
8
            The State charged Burton by amended information with two counts of first
9           degree incest and one count of second degree incest. The State alleged
            domestic violence, an ongoing pattern of abuse, and abuse of a portion of
10          trust as aggravating sentencing factors on each count.

11          Pretrial, the State made a motion in limine to admit under ER 404(b) the
            DNA evidence found on the bathrobe. Defense counsel conceded that the
12          evidence properly showed Burton's lustful disposition towards MBOW.
            But defense counsel argued that the DNA evidence showed sexual
13          intercourse after MBOW turned 18, which was not a crime because she
            was Burton's stepdaughter. Defense counsel argued that this evidence was
14          more prejudicial than probative. The trial court ruled that the evidence was
            admissible under ER 404(b) and the DNA evidence was admitted at trial.
15
            At trial, a forensic scientist testified that the robe had not been washed
16          after the DNA was deposited, but could give no opinion as to how old the
            DNA was. Thus, it was not established at trial whether the DNA had been
17          deposited before or after MBOW's 18th birthday. The State's expert
            further testified that, due to the amount of DNA found on the robe, the
18          DNA had come from biological fluids and not skin contact. Defense did
            not request any limiting instruction regarding the DNA evidence.
19
            MBOW testified to several specific incidents of sexual abuse. She testified
20          about one incident when she masturbated Burton on the couch, and her
            mother, Karen Burton, walked in, caught them, and kicked Burton out of
21          the house for several days. In another incident, Burton tied MBOW's
            hands above her head using tape and had sexual intercourse with her. And
22          in a third incident, Burton tied her arms and legs to the bed using nylon
            and had sexual intercourse with her. All of these incidents occurred before
23          MBOW was 18. MBOW also testified that she had sexual intercourse with

24

Burton after she turned 18, on the night before she reported the prior sexual abuse.

Detective Lori Blankenship, who executed the search warrant, briefly testified that she collected what she believed to be some marijuana pipes during the search. Detective Elizabeth Gundrum, who assisted Detective Blankenship, also testified about the marijuana pipes: "[W]e took two marijuana smoking pipes." 2 Report of Proceedings (RP) at 157. Burton did not object to this testimony. The pipes themselves were not admitted.

Burton testified on his own behalf. Burton unequivocally denied having any sexual contact or sexual intercourse with MBOW. Burton claimed that MBOW had been the only perpetrator of any sexual misconduct, including "flashing" him, making sexual proposition to him, and sending online messages to others regarding "bondage and other sexual activities." 3 RP at 292-93, 299.

The jury found Burton guilty as charged and returned "yes" verdicts on each aggravating factor. The trial judge gave Burton an exceptional sentence of 240 months confinement.

Dkt. 20, Ex. 2 at 2-4.

## STATE PROCEDURAL HISTORY

### 1. Direct Appeal/First Personal Restraint Petition

Through counsel and *pro se*, petitioner appealed to the Washington Court of Appeals. Dkt. 20, Ex. 3, Ex. 4. Appellate counsel's brief presented four issues, arguing (1) that trial counsel's failure to object to inadmissible evidence of a marijuana pipe violated petitioner's right to effective assistance of counsel; (2) that the trial court erred in allowing the State to present inadmissible ER 404(b) testimony; (3) that insufficient evidence was presented to convict petitioner of incest in the first degree and incest in the second degree as alleged in the information; and (4) that the trial court abused its discretion in sentencing petitioner to an exceptional sentence of 240 months. Dkt. 20, Ex. 3. In his *pro se* statement of additional grounds, petitioner raised 24 additional issues, arguing that trial counsel provided ineffective assistance by: (1) failing to object to

1    change of charges submitted to him on 05/31/11 (that was the docketed and actual first

2    day of trial); (2) failing to request a continuance to prepare a defense based on the

3    charges presented to him on 05/31/114 [sic]; (3) failing to object to suppression of prior

4    statements of witnesses; (4) failing to object to closing the courtroom to individually

5    question prospective jurors; (5) failing to attempt to impeach prosecution witnesses with

6    their prior inconsistent statements on key elements of their testimony; (6) failing to

7    request a continuance to investigate when "surprise" witnesses were announced mid-trial

8    by prosecution on 06/01/11; (7) failing to object to prosecution's improper remarks

9    during closing arguments; (8) knowingly misstating facts during closing argument; (9)

10   failing to object to introduction of improper 404(b) evidence of redacted jail phone

11   recordings; (10) failing to object to use of redacted jail phone recordings for

12   impeachment purposes on collateral issues; (11) failing to object to introduction of

13   improper 404(b) evidence of a photograph of Karen Burton's nightstand drawer

14   containing sex toys and condoms; (12) failing to object to leading questions by

15   prosecutor; and (13) failing to object to prosecution's improper remarks during the

16   State's rebuttal argument.  Dkt. 20, Ex. 4.

17           Further, petitioner argued that the prosecutor: (1) improperly vouched for the

18   complaining witness during closing arguments; and (2) knowingly misstated facts during

19   closing arguments. Petitioner also argued that the trial court: (1) erred in removing Karen

20   Burton from the courtroom prior to *voir-dire*; (2) erred in not considering an alternative

21   to closure; and (3) erred in allowing improper ER 404 (b) testimony regarding alleged

22   possession of marijuana pipes.  *Id*. Finally, petitioner additionally argued: (1)

23   prosecutorial misconduct; (2) constructive denial of counsel; (3) denial of public trial; (4)

24

1    incomplete record; (5) cumulative error; and (6) ineffective assistance of appellate

2    counsel.  *Id*.

3         Petitioner, *pro se*, filed a motion to modify judgment and sentence in the superior

4    court.  Dkt. 20, Ex. 5. The superior court transferred the motion to the court of appeals as

5    a personal restraint petition. Petitioner raised three issues, arguing: (1) the clause [in the

6    judgment and sentence prohibiting contact between Burton and his wife] "forces a

7    divorce neither I or my wife sanction, request or endorse. We have been kept ignorant of

8    its contents until recently. We desire to remain married and in regular contact; (2)

9    enforcing this clause creates a great hardship on both of us. We are moral and spiritual

10   support for each other. This forced 'divorce' is a huge emotional strain and not conducive

11   to standard rehabilitation principles; and (3) Karen Burton is also my outside legal

12   resource with my full power of attorney. This greatly hampers my appeal and similar

13   legal actions."  *Id*.  The State responded. Dkt. 20, Ex. 6.  The court of appeals granted

14   petitioner's request to strike the condition barring him from having contact with his wife

15   and affirmed his sentence in all other respects. Dkt. 20, Ex. 2.

16        On September 13, 2013, petitioner filed a motion for discretionary review in the

17   Washington Supreme Court.  Dkt. 20, Ex. 8.  Petitioner raised four claims, with subparts,

18   arguing: (1) prosecutorial misconduct (misstatement of facts, vouching/personal opinion,

19   statements regarding defendant's guilt, improper introduction of ER 404(b) evidence, and

20   including unconstitutional items in judgment and sentence); (2) ineffective assistance of

21   defense counsel (no objections, not prepared, and allowing unconstitutional inclusions in

22   judgment and sentence); (3) trial judge - abuse of discretion (allowing introduction of

23   improper 404(b) evidence, allowing unconstitutional inclusions in judgment and

24

1  sentence); and (4) cumulative error. *Id*. Petitioner also filed a motion to compel. Dkt. 20,

2  Ex. 9.  On December 11, 2013, the Washington Supreme Court denied both the review

3  and the motion. Dkt. 20, Ex.10.

4  **2. Second Personal Restraint Petition**

5  Petitioner filed his second personal restraint petition on March 4, 2014 and raised

6  the following issues: (1) ineffective assistance of appellate counsel; and (2) ineffective

7  assistance of defense counsel; and (3) that he did not receive a fair, public and impartial

8  trial as guaranteed by both federal and state constitutions.  Dkt. 20, Ex. 11.  The State

9  responded. Dkt. 29, Ex.12. On February 12, 2015, the court of appeals dismissed the

10  petition, finding it was both successive and frivolous. Dkt. 20, Ex.13. On March 3, 2015,

11  petitioner then filed a motion for discretionary review, raising the following grounds: (1)

12  ineffective assistance of counsel (based on jury *voir dire* transcripts); and (2)

13  prosecutorial misconduct (based on jury *voir dire* transcripts).  Dkt. 20, Ex. 14.  The State

14  answered the motion. Dkt. 20, Ex.15.  The petitioner replied. Dkt. 20, Ex. 16.  On

15  February 3, 2016, the Washington Supreme Court denied review. Dkt. 20, Ex. 17.

16

17  **EVIDENTIARY HEARING**

18  The decision to hold a hearing is committed to the Court's discretion.  *Schriro v.*

19  *Landrigan*, 550 U.S. 465, 473 (2007).  "[A] federal court must consider whether such a

20  hearing could enable an applicant to prove the petition's factual allegations, which, if

21  true, would entitle the applicant to federal habeas relief."  *Landrigan*, 550 U.S. at 474.  In

22  determining whether relief is available under 28 U.S.C. § 2254(d)(1), the Court's review

23  is limited to the record before the state court.  *Cullen v. Pinholster*, 131 S.Ct. 1388

24  (2011).  A hearing is not required if the allegations would not entitle petitioner to relief

1    under 28 U.S.C. § 2254(d).  *Landrigan,* 550 U.S. at 474.  "It follows that if the record

2    refutes the applicant's factual allegations or otherwise precludes habeas relief, a district

3    court is not required to hold an evidentiary hearing."  *Id.*; *see also Cullen,* 131 S. Ct. 1388

4    (2011). "[A]n evidentiary hearing is not required on issues that can be resolved by

5    reference to the state court record. *See Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir.

6    1998).

7          Petitioner's habeas claims raise only questions of law and may be resolved by a

8    review of the existing state court record. Therefore, the Court finds it unnecessary to hold

9    an evidentiary hearing.

10                                        **DISCUSSION**

11   **A.  GROUNDS FOR RELIEF**

12         Petitioner presents the Court with eight grounds for federal habeas relief:

13      1. Ground One: prosecutorial misconduct, (1) sub-part 1 – the prosecutor asked
           leading questions of its witnesses and treated Karen Burton as a hostile
14         witness; (2) sub-part 2 – the prosecutor misstated the facts/testimony of
           defendant, Karen Burton, and Jan Johnson;  (3) sub-part 3 – the prosecutor
15         stated the redacted jail phone recordings are "garbled," Yet she "testifies" as
           to the contents therein; (4) sub-part 4 – the prosecutor (referring to addendums
16         to the behavior modification contract) pointed out that Mr. and Ms. Burton's
           signatures were not present; (5) sub-part 5 –  the prosecutor vouched for
17         MBOW's credibility; and (6) sub-part 6 – the prosecutor gave her opinion
           during the closing arguments.
18
        2. Ground Two: ineffective assistance of trial counsel, (1) sub-part 1 – trial
19         counsel failed to object to leading questions by the prosecutor; (2) sub-part 2 -
           trial counsel failed to attempt to impeach prosecution witnesses with their
20         prior inconsistent statements on key elements of their testimony; (3) sub-part
           3 – trial counsel failed to request a continuance to investigate when "surprise"
21         witnesses were announced mid-trial by prosecution; (4) sub-part 4 – trial
           counsel failed to object to introduction of improper 404(b) evidence regarding
22         "marijuana pipes;" (5) sub-part 5 – trial counsel failed to object to
           introduction of improper 404(b) evidence contained in redacted jail phone
23         recordings; (6) trial counsel failed to object to use of improper 404(b)
           evidence (redacted jail phone recordings) for impeachment purposes on
24

collateral issues; (7) sub-part 7 – trial counsel failed to object to the prosecutor "testifying" to the contents of certain redacted jail phone recordings, she herself stated were "garbled;" (8) sub-part 8 – trial counsel failed to object to introduction of State's Exhibit No. 22 – color photocopy of a light gray robe; (9) sub-part 9 – trial counsel failed to give a meaningful response to the prosecutor's objection to the answer of the defendant during cross examination; (10) sub-part 10 – trial counsel failed to object to introduction of improper 404 (b) evidence – a picture of Karen Burton's nightstand drawer containing "sex toys and condom;" (11) sub-part 11 - trial counsel failed to object to prosecution's remarks during the state's closing and rebuttal arguments; (12) sub-part 12 – trial counsel knowingly misstated facts during closing arguments; (13) sub-part 13 – trial counsel failed to object to the prosecutor treating Ms. Burton as a "hostile witness" during direct examination as a prosecution witness, despite the trial court's decision on the matter; (14) sub-part 14 – trial counsel never mentioned the option of an *Alford* Plea; (15) sub-part 15 – trial counsel was given substantial evidence details of the statement made against the defendant and conducted no investigation on these nor submitted them to the court; (16) sub-part 16 - Mr. Kibbe failed to contest any of the errors that transpired during the trial – including the jury voir dire; (a) During general questioning the jury voir dire potential jurors were asked if the defendant was innocent until proven guilty or guilty until proven innocent. Two potential jurors stated that the defendant would have to prove his innocence. (One of those two became the jury foreperson despite three (3) unused defense preemptory challenges. Mr. Burton requested that person be removed, but trial counsel refused.); (b) Nineteen (19) potential jurors were interviewed in a closed courtroom regarding their jury questionnaire responses; (c) potential juror #67 jumped up and yelled "End the cycle of abuse now! "Mr. Burton asked trial counsel what could be done about that. Trial counsel responded "Don't worry she won't get on the jury."

3.   Ground Three: denial of public trial based on (1) sub-part 1 - Ms. Burton was told to leave, against her objection, during the motions *in limine* and the trial court told her she could not return until after her testimony; (2) sub-part 2 – the trial court provided the jury pool with questionnaires and instructed that they could discuss their answers 'in private' if they wished; and (3) sub-part 3 - several of the prospective jurors were questioned individually in a 'closed' courtroom.

4.   Ground Four: ineffective assistance of appellate counsel based on (1) Mr. and Mrs. Burton contacted appellate counsel several times regarding the direct appeal; and (2) appellate counsel did not request transcripts of the *voir dire* to examine in order to place violation of public trial rights in the direct appeal.

5.   Ground Five: trial court erred based on (1) testimony regarding "marijuana pipes;"(2) redacted jail phone recordings; and (3) bathrobes' chain of evidence

was incomplete; (a) dark blue and black bathrobes were obtained by search warrant; (b) picture was taken of light grey bathrobe (Ex. 22); (c) lab technician testified she had obtained DNA samples.

6.  Ground Six: trial court abused its discretion based on an exceptional sentence of 240 months imposed.

7.  Ground Seven: insufficient evidence.

8.  Ground Eight: cumulative error.

Dkt. 6 at 1-14.

## B.  EXHAUSTION

Respondent concedes that petitioner properly exhausted subpart 5 of his first habeas claim (prosecutorial misconduct-vouching for the victim), his ineffective assistance of trial counsel (ground 2), his ineffective appellate counsel claim (ground 4), and his cumulative error claim (ground 8). Dkt. 19 at 13. Respondent argues that petitioner failed to properly exhaust the rest of the claims, and that these claims are now procedurally defaulted. *Id.* Respondent specifically argues that petitioner failed to properly exhaust grounds 1 (subparts 1-4, 6 only), 3, 5, 6, 7 because he failed to properly raise those claims at every level of the state court's review. *Id.*

### I.  Exhaustion Standard

A state prisoner seeking habeas corpus relief in federal court must exhaust available state relief prior to filing a petition in federal court. *See* 28 U.S.C. § 2254. As a threshold issue, the court must determine whether or not petitioner has properly presented the federal habeas claims to the state courts. The applicable statute, 28 U.S.C. § 2254(b)(1) states, in pertinent part:

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted unless it appears that: (A) the applicant has exhausted the remedies

1    available in the courts of the state; or (B)(i) there is an absence of
     available state corrective process; or (ii) circumstances exist that render
2    such process ineffective to protect the rights of the applicant. If respondent
     intends to waive the defense of failure to exhaust state remedies,
3    respondent must do so explicitly.

4    28 U.S.C. § 2254 (b)(3).

5         Claims for relief that have not been exhausted in state court are not cognizable in

6    a federal habeas corpus petition. *James v. Borg*, 24 F.3d 20, 24 (9th Cir. 1994).  A

7    petitioner must properly raise a habeas claim at every level of the state courts' review.

8    *See Ortberg v. Moody*, 961 F.2d 135, 138 (9th Cir. 1992).  "[S]tate prisoners must give

9    the state courts one full opportunity to resolve any constitutional issues by invoking one

10   complete round of the State's established appellate review process." *O'Sullivan v.*

11   *Boerckel*, 526 U.S. 838, 845 (1999); *See also Rose v. Lundy*, 455 U.S. 509, 518-19

12   (1982).  A complete round of the state's established review process includes presentation

13   of a petitioner's claims to the state's highest court. *James*, 24 F.3d at 24.

14        In order to fairly present a claim, the prisoner must alert the state courts to the fact

15   that he is asserting claims under the United States Constitution. *Duncan v. Henry*, 513

16   U.S. 364, 365 (1995).  The prisoner must specifically characterize his claims as federal

17   claims, either by referencing specific constitutional provisions or by citing to relevant

18   federal case law. *Lyons v. Crawford*, 232 F.3d 666, 670 (9th Cir. 2000), *opinion*

19   *amended*, 247 F.3d 904 (9th Cir. 2001).

20        Underlying the requirement that a petitioner exhaust his claims is the principle

21   that, as a matter of comity, state courts must be afforded "the first opportunity to remedy

22   a constitutional violation." *Sweet v. Cupp*, 640 F.2d 233, 236 (9th Cir. 1981); *Jackson v.*

23   *Roe*, 425 F.3d 654, 657 (9th Cir. 2005) (*citation omitted*) (Requiring a petitioner to

24

1  exhaust his claims has long been recognized as "one of the pillars of federal habeas

2  corpus jurisprudence."). "Exhaustion demands more than drive-by citation, detached

3  from any articulation of an underlying federal legal theory." *Castillo v. McFadden*, 399

4  F.3d 993, 1003 (9th Cir. 2005).

5      *1.  Exhaustion of Ground 1 - Prosecutorial Misconduct (sub-parts 1, 2, 3, 4, 6)*

6          *a.  Unexhausted Portion of Ground 1 (sub-part 1) - Leading Questions*

7          Petitioner presented a claim (habeas ground one, sub-part one) to the court of

8  appeals stating generally that the prosecutor asked leading questions (without arguing any

9  specific facts). Dkt. 20, Ex. 4 at 7-8. Petitioner did not present that claim to the state

10 supreme court. Dkt. 20, Ex. 8. Petitioner failed to properly raise this claim at every level

11 of the state courts' review. *See* Dkt. 10, Ex. 8. *See Ortberg v. Moody*, 961 F.2d 135, 138

12 (1992). In addition, petitioner's broad claim alleging that the prosecutor asked leading

13 questions, *see* Dkt. 20, Ex. 4 at 7-8, cannot be read to sufficiently raise a federal

14 constitutional issue. *See Shumway,* 223 F.3d at 982. Therefore, petitioner failed to

15 exhaust his state court remedies with respect to ground one, sub-part one.

16          *b.  Unexhausted Portion of Ground 1 (sub-part 2) – Misstatement of Facts*

17         Petitioner presented ground 1, sub-claim 2 as a federal constitutional violation to

18 the court of appeals. Dkt. 20, Ex. 4, at 8-10.  Petitioner, however, presented a different

19 factual scenario to the state supreme court when he argued that the prosecutor misstated

20 the facts. Dkt. 20, Ex. 8, at 3-5. Petitioner failed to present to the state supreme court the

21 specific factual allegations he raised in the court of appeals. And, to the extent petitioner

22 improperly tried to incorporate by reference the arguments he made in the court of

23 appeals, the Washington Supreme Court does not allow incorporation of lower courts'

24

1  briefings by reference.[1] Petitioner, therefore, failed to properly present to the state

2  supreme court the claims he presented in the court of appeals.  Thus, petitioner failed to

3  exhaust his state court remedies with respect to ground one, sub-part 2.

4       c.  *Unexhausted Portion of Ground 1 (sub-part 3) – Statement Regarding Jail
           Phone Recordings*

5       Petitioner presented sub-claim 3 as a state violation to the court of appeals. Dkt.

6  20, Ex. 4, at 9-10. Petitioner's appellate brief alleges misconduct when the prosecutor

7  indicated the redacted jail phone recordings were garbled, yet still testified as to the

8  contents. *See id*.  Petitioner cites only to state case law in his appellate brief. *Id*. at 10.

9  Petitioner, however, presented an entirely different factual scenario to the state supreme

10  court when he argued that the "prosecutor tells the jury . . .  and there's nowhere in these

11  jail phone calls where he [Burton] talks about having issues with sexual relations."  Dkt.

12  20, Ex. 8, at 3-5. Petitioner further argues to the state supreme court that "the phone calls

13  between Burton and Karen showed . . . that Burton could not have committed the alleged

14  acts because of sexual difficulties he had."  *Id.* at 3.  Thus, petitioner failed to present to

15  the state supreme court the specific factual allegations he raised in the court of appeals.

16  And, again, to the extent he tried to incorporate by reference the arguments he made in

17  the court of appeals, the Washington Supreme Court does not allow incorporation of

18  lower courts' briefings by reference. Because he failed to properly present to the state

19  supreme court the claims he presented in the court of appeals, petitioner failed to exhaust

20  his state court remedies with respect to ground one, sub-part 3.

21

22

23      [1] *See State v. Gamble*, 168 Wn.2d 161, 180-81, 225 P.3d 973 (2010) [A]rgument incorporated by reference to other briefing is not properly before this court"); *Saldin Sec., Inc. v. Snohomish County*, 134 Wn.2d 288, 297 n. 4, 949 P.2d 370 (1998) (Washington Supreme Court will not review incorporated arguments from Court of Appeals briefing).

24

*d.  Unexhausted Portion of Ground 1 (sub-part 4) – Evidence Regarding Behavior Modification Contract*

Petitioner presented sub-claim 4 as a federal constitutional violation to the court of appeals. Dkt. 20, Ex. 4, at 10.  He argued that the prosecutor misstated the facts regarding the absent signatures of Mr. and Mrs. Burton on the addendums to the behavior modification contract (from MBOW's school counselor) that was never introduced as evidence. *Id.*  Petitioner, however, did not present the same claim to the state supreme court.  Dkt. 20, Ex. 8.  Thus, petitioner failed to exhaust his state court remedies with respect to ground one, sub-part 4.

*e.  Unexhausted Portion of Ground 1 (sub-part 6) – Prosecutor's Opinion*

Petitioner presented sub-claim 6 as a federal constitutional violation to the court of appeals. Dkt. 20, Ex. 4 at 10-11.  In his appellate brief, petitioner argues that the prosecutor gave her opinion about Debbie Burton's testimony not being helpful and that defendant's story made no sense. *Id. citing* RP 352.  Petitioner, however, presented a different factual scenario to the state supreme court when he argued that the prosecutor offered her personal opinion at closing argument regarding MBOW and the sexual relationship between both MBOW and defendant and defendant and his wife. Dkt. 20, Ex. 8 at 5-6. Petitioner failed to present to the state supreme court the specific factual allegations that he raised in the court of appeals.  Thus, petitioner failed to exhaust his state court remedies with respect to ground one, sub-part 6.

*2. Unexhausted Ground 3–Denial of Public Trial*

With respect to his third habeas claim (denial of public trial), petitioner presented federal habeas sub-claims 1 and 2 to the state court of appeals as federal constitutional violations. Dkt. 20, Ex. 4 at 16. Petitioner did not present sub-claims 1 and 2 to the

1  supreme court. Dkt. 20, Ex. 8. He presented his federal habeas sub-claim 3 to the court of

2  appeals in his personal restraint petition as a federal constitutional violation. Dkt. 20, Ex.

3  11 at 10. Petitioner did not present this claim as a federal constitutional violation to the

4  state supreme court. Dkt. 20, Ex. 14 at 5. Having failed to properly raise this ground 3

5  (including 3 sub-claims) at every level of the state courts' review, petitioner failed to

6  exhaust his state court remedies with respect to ground three.

7      *3.  Unexhausted Ground 5–Trial Court Error*

8          Respondent argues that petitioner failed to present federal habeas sub-claims 1, 2

9  and a portion of sub-claim 3 to the state supreme court as federal constitutional

10  violations. Petitioner did not properly exhaust a part of his sub-claim 3 (DNA evidence

11  on the bathrobe), when he failed to present it at as a federal constitutional violation at

12  every level of the state courts' review. Petitioner presented sub-claim 3 as a state law

13  violation in his brief to the court appeals. Dkt. 20, Ex. 3 at 1, 24-28. Petitioner's brief

14  cited only to Washington State legal standards and the cases he cited referenced only

15  Washington State law. *See id*. Petitioner presented sub-claim 3 as a federal constitutional

16  violation to the state supreme court. Dkt. 20, Ex. 8 at 16.  In his motion for discretionary

17  review, petitioner alleged his federal constitutional rights to a fair trial were violated

18  when the trial court erred in allowing in the DNA evidence.  *See id*. Respondent contends

19  that petitioner failed to exhaust ground 5 as he failed to properly raise this claim

20  (including all sub-claims) at every level of the state courts' review. Dkt. 19 at 20.  Having

21  failed to properly raise this claim (including 3 sub-claims) at every level of the state

22  courts' review, petitioner has failed to exhaust his state court remedies with respect to

23  ground five.

24

*4. Unexhausted Ground 6– Trial Court's Abuse of Discretion (sentence of 240 months)*

Respondent argues that petitioner failed to properly exhaust his sixth habeas claim, trial court's alleged abuse of discretion by sentencing him to an exceptional sentence of 240 months, by not presenting it at every level of the state courts' review as a federal claim; Dkt. 20, Ex. 8 (he failed to present the claim to the state supreme court). The Court agrees and recommends finding that petitioner failed to properly exhaust his sixth habeas claim.

*5. Unexhausted Ground 7–Insufficient Evidence*

Respondent argues that petitioner failed to properly exhaust his seventh habeas claim, insufficient evidence, by not presenting it as a federal constitutional violation at every level of the state courts' review. Dkt. 19 at 20.  Petitioner presented it as a state claim in his court of appeals brief. Dkt. 20, Ex. 3 at 28-30. Petitioner cited only to Washington state legal standards and statutes and the cases he cited referenced only Washington state law. Petitioner presented it as a federal claim in his motion for discretionary review, citing to United States Constitution Amendments, in addition to the Washington State Constitution. Dkt. 20, Ex. 8 at 18. The seventh habeas claim, therefore, is not properly exhausted because petitioner did not present it as a federal constitutional claim at every level of the state courts' review.  Dkt. 19 at 20.

*6. Procedural Bar*

Respondent argues that grounds 1 (except sub-part 5), 3, 5, 6 and 7 are procedurally barred under RCW 10.73.090, RCW 10.73.140, and RAP 6.4(d).  Dkt. 19 at 21. Whether a claim is procedurally defaulted is distinct from whether a claim is exhausted in the habeas context.  *Franklin v. Johnson*, 290 F.3d 1223, 1230 (9th Cir.

1    2002).  A claim is not exhausted when the state court has never been presented with an

2    opportunity to consider a petitioner's claims and that opportunity may still be available to

3    the petitioner under state law.  28 U.S.C. § 2254(c).  In contrast, a claim is procedurally

4    defaulted when it is clear that the state court has been presented with the federal claim but

5    declined to reach the issue for procedural reasons or it is clear that the state court would

6    hold the claims procedurally barred.  *Franklin v. Johnson*, 290 F.3d at 1230-31. If a

7    petitioner's claims are procedurally barred under state law, they are deemed to be

8    procedurally defaulted for purposes of federal habeas review.  *Coleman v. Thompson*,

9    501 U.S. 722, 735 n.1 (1991).

10          Washington law prohibits the filing of successive collateral challenges.  RCW

11   10.73.140; RAP 16.4(d).   Petitioner previously filed a personal restraint petition and is,

12   therefore, barred from filing another collateral challenge absent a showing of good cause.

13   Because his claims are procedurally barred under Washington law, the claims are not

14   cognizable in a federal habeas corpus petition absent a showing of cause and prejudice or

15   actual innocence.

16          Under Washington law, a defendant may not collaterally challenge a conviction

17   more than one year after the conviction becomes final.  RCW 10.73.090(1).  *See also*

18   *Aguilar v. Washington*, 77 Wn. App. 596, 603 (1995) (applying Washington's one-year

19   time limit as a mandatory bar).  If a prisoner files a direct appeal of his conviction and

20   sentence, "then the judgment is final when the appellate court issues its mandate

21   'disposing of the direct appeal.'"  *In re Skylstad*, 160 n.2d 944, 948-49 (2007) (*quoting*

22   RCW 10.73.090(3)(b)). Petitioner's conviction became final for purposes of state law on

23

24

1   December 11, 2013 when the Washington Supreme Court entered its Order. Dkt. 20, Ex.

2   10.

3        The Court notes the appellate court's mandate is not included in the state court

4   record, nor is a petition for certiorari filed with the U.S. Supreme Court. The state

5   supreme court denied the petition for review on December 11, 2013.  See Dkt. 20, Ex. 10;

6   RCW 10.73.090(3). While petitioner's direct appeal became final in 2013, the exact date

7   is not clear from the record before the Court. The time to file a petition or motion for

8   post-conviction relief expired in 2014 -- one year after petitioner's direct appeal became

9   final. See RCW 10.73.090(1). As the one-year statute of limitations has passed, petitioner

10  is barred from filing a subsequent PRP in the state court asserting claims 1 (except

11  ground 1, sub-part 5), 3, 5, 6 and 7. Therefore, ground 1 (except claim 1, sub-part 5), 3, 5,

12  6 and 7 are procedurally defaulted in federal court. *See Casey v. Moore*, 386 F.3d 896,

13  920 (9th Cir. 2004).

14       *Cause and Prejudice*

15       To show cause in federal court, petitioner must show that some objective factor,

16  external to the defense, prevented petitioner from complying with state procedural rules

17  relating to the presentation of petitioner's claims. *McCleskey v. Zant*, 499 U.S. 467, 493-

18  94 (1991) (*citing Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  A petitioner cannot

19  demonstrate cause to excuse a procedural default where the cause is fairly attributable to

20  the petitioner's own conduct.  *McCoy v. Newsome*, 953 F.2d 1252, 1258 (11th Cir. 1992).

21  Examples that may satisfy "cause" include "interference by officials" that makes

22  compliance with state procedural rules impracticable, "a showing that the factual or legal

23

24

1    basis for a claim was not reasonably available to counsel", or "ineffective assistance of

2    counsel." *McCleskey*, 499 U.S. at 494 (*citing Murray*, 477 U.S. at 488).

3         Here, petitioner has not alleged any facts that establish cause or prejudice.

4    Petitioner simply did not raise claims 1 (except sub-part 5), 3, 5, 6 and 7 under federal

5    law at all levels of the state court in a timely manner.  Accordingly, petitioner has made

6    no showing of cause or prejudice.

7         2.  *Fundamental Miscarriage of Justice*

8         Petitioner could overcome the procedural bar in this case if he could show a

9    fundamental miscarriage of justice would occur if his claims were not considered by the

10   court.  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The United States Supreme

11   Court held that in order to demonstrate that petitioner suffered a fundamental miscarriage

12   of justice, petitioner must establish that, viewing all the evidence in light of new reliable

13   evidence, "it is more likely than not that no reasonable juror would have found petitioner

14   guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537 (2006) (*citing*

15   *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

16        Petitioner did not present any new evidence demonstrating that it is more likely

17   than not that no reasonable juror would have convicted him in light of the new evidence.

18   Therefore, there is no fundamental miscarriage of justice.

19        Because the Court cannot excuse petitioner's procedural default, grounds 1

20   (except sub-part 5), 3, 5, 6 and 7 are not cognizable in the habeas corpus proceeding and

21   should therefore be dismissed.

22

23

24

## C. **CLAIMS ON THE MERITS**

A habeas corpus petition shall not be granted with respect to any claim adjudicated on the merits in the state courts unless the adjudication either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts.  28 U.S.C. § 2254(d).  Further, a determination of a factual issue by a state court shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

1. *Exhausted Ground 1 (sub-part 5)– Prosecutorial Misconduct-Vouching for MBOW's Credibility*

Petitioner argues that his conviction violates due process because the prosecutor vouched for MBOW's credibility during closing argument. Dkt. 6 at 5. Petitioner claims the prosecutor vouched for MBOW's credibility by stating "Not that she needs it . . . Even without any other evidence, she is a very credible witness."  RP 347.  The prosecutor also stated "[t]he one credible witness besides law enforcement and such, has been[MBOW]."  RP 353.  "Her testimony is the only testimony that makes sense."  RP 355-356  Respondent contends that the mere mention of a witness' credibility by a prosecutor is not improper vouching, but rather is arguing reasonable inferences from the evidence, which is permissible. Dkt. 19 at 28. In the absence of the United States Supreme Court precedent to the contrary, the state courts' adjudication of these claims on the merits cannot be contrary to, or an unreasonable application of, such precedent.

1        *Darden v. Wainwright*, 477 U.S. 168 (1986) is the well established

2 prosecutorial misconduct review standard. Its standard is "clearly established Federal

3 law" for purposes of 28 U.S.C. § 2254(d). *Parker v. Matthews*, 132 S. Ct. 2148, 2153

4 (2012) (per curiam). Unless the prosecutor's conduct prejudiced a specific constitutional

5 right, federal habeas corpus claims alleging that a state prosecutor committed misconduct

6 are reviewed under the narrow standard of due process rather than the broad exercise of

7 supervisory power. *Darden,* 477 U.S. at 181.  Even overzealous or obnoxious conduct by

8 a prosecutor does not automatically warrant federal habeas relief. *Furman v. Wood*, 190

9 F.3d 1002, 1005-06 (9th Cir. 1999); *Thomas v. Cardwell*, 626 F.2d 1375, 1387 (9th Cir.

10 1980). Closing arguments are not evidence and ordinarily carry less weight with the jury

11 than do the court's instructions. *Boyde v. California*, 494 U.S. 370, 384 (1990). Jurors are

12 presumed to follow the instructions of the court, including instructions that closing

13 arguments are not evidence. *Drayden v. White*, 232 F.3d 704, 713 (9th Cir. 2000).

14        Respondent argues that the state appellate court applied the Washington

15 prosecutorial misconduct review standards which are identical to *Darden*. Dkt. 19 at 28.

16 The state court cited to the Washington case *State v. Emery*, 174 Wn.2d 741 (2012) that

17 held to establish prosecutorial misconduct, the petitioner must show that the conduct was

18 improper and that the improper comments resulted in prejudice that had a substantial

19 likelihood of affecting the verdict. Dkt. 20, Ex. 2 at 21. The state court also cited to a

20 Washington case which held that for a prosecutor to engage in improper vouching, a

21 prosecutor must be expressing a personal opinion as to a witness' veracity. *Id.* at 26

22 (*citing to State v. Thorgerson*, 172 Wn.2d 438, 443 (2011)). In Washington, the court

23 noted, a prosecutor has wide latitude to argue inferences from the evidence including

24

1    inferences regarding witness' credibility. Dkt. 20, Ex. 2 at 26 (*citing to State v. Warren*,

2    165 Wn.2d 17, 30 (2008)).

3          Respondent further argues that the state court reviewed the State's closing

4    argument and concluded that the prosecutor argued reasonable inferences from the

5    evidence regarding the victim's credibility. Dkt. 19 at 28.  Respondent concludes that the

6    prosecutor properly presented the State's theory of the case to the jury, which is not

7    vouching, as petitioner alleges. Dkt. 19 at 28.

8          The Washington Court of Appeals held:

9          Burton argues that the prosecutor committed misconduct by vouching for
           MBOW during closing arguments.  We disagree.
10
           A prosecutor commits improper vouching by expressing a personal
11         opinion as to a witness's veracity.  *State v. Thorgerson*, 172 Wn.2d 438,
           443, 258 P.3d 43 (2011).   But a prosecutor's wide latitude to argue
12         inferences from the evidence includes arguing inferences regarding
           witness credibility.  *State v. Warren*, 165 Wn.2d 17, 30, 195 p.3d 940
13         (2008).  Improper vouching will not be found prejudicial on appeal unless
           it is clear and unmistakable that the prosecutor is expressing a personal
14         opinion.  *Warren*, 165 Wn.2d at 30.

15         Burton cites a number of instances in the record where the prosecutor
           argued that MBOW was a credible witness.  But each instance shows the
16         prosecutor arguing reasonable inferences from the evidence regarding
           MBOW's credibility.  The prosecutor did not give her personal opinion
17         that MBOW was credible.  Burton appears to base his argument on the
           idea that any mention of witness credibility by the prosecutor is improper
18         vouching, but that is incorrect.  Burton has not shown misconduct on this
           point.
19
     Dkt. 20, Ex. 2 at 26-27.
20
           It is the petitioner's burden to state facts that point to a real possibility of
21
     constitutional error in this regard.  *See O'Bremski v. Maass*, 915 F.2d 418, 420 (9th
22
     Cir.1990).  Petitioner has not met his burden.  A review of the state's closing and rebuttal
23
     shows that the prosecutor properly presented the State's theory of the case to the jury.
24

1    The prosecutor argued reasonable inferences from the evidence presented at trial - that

2    the Burton's (Petitioner and Karen Burton) testimony was not credible and that MBOW

3    was credible. Dkt. 20, Ex. 18.  On direct review, the supreme court denied petitioner's

4    motion for discretionary review without comment. Dkt. 20, Ex. 10. Even though that

5    denial was an adjudication on the merits requiring deferential AEDPA review, the court

6    of appeals' dismissal of the claim on the merits provided sound reasons for the denial.

7    Dkt. 20, Ex. 2 at 21, 26-27.

8         The state courts did not err by rejecting petitioner's prosecutorial misconduct

9    claim as the prosecutor's comments did not render petitioner's trial fundamentally unfair

10   or his conviction a violation of due process.  The prosecutor's comments constituted an

11   inference to be drawn from the evidence presented. The Court finds that the state courts'

12   adjudication is not contrary to or an unreasonable application of federal law. Thus, the

13   Court should deny habeas relief as to this portion (sub-part 5) of petitioner's first ground

14   for relief.

15        *2.   Exhausted Ground 2 and Ground 4-ineffective assistance of counsel*

16        In grounds two and four, petitioner raises 18 claims alleging ineffective

17   assistance of counsel. Dkt. 6 at 6, 11. Petitioner alleges that trial counsel failed to object

18   to leading questions by the prosecutor, failed to attempt to impeach prosecution witnesses

19   with their prior inconsistent statements on key elements of their testimony, failed to

20   request a continuance to investigate when "surprise" witnesses were announced mid-trial

21   by prosecution, failed to object to introduction of improper 404(b) evidence regarding

22   marijuana pipes, failed to object to introduction of improper 404(b) evidence contained in

23   redacted jail phone recordings, failed to object to use of improper 404(b) evidence

24

1    (redacted jail phone recordings) for impeachment purposes on collateral issues, failed to

2    object to the prosecutor "testifying" to the contents of certain "garbled" redacted jail

3    phone recordings, failed to object to introduction of State's Exhibit No. 22 – color

4    photocopy of a light gray robe, failed to give a meaningful response to the prosecutor's

5    objection to the answer of the defendant during cross examination, failed to object to

6    introduction of improper 404 (b) evidence – a picture of Karen Burton's nightstand

7    drawer containing sex toys and condom, failed to object to prosecution's remarks during

8    the state's closing and rebuttal arguments, knowingly misstated facts during closing

9    arguments, failed to object to the prosecutor treating Ms. Burton as a hostile witness

10   during direct examination (as a prosecution witness), failed to offer an *Alford* Plea, failed

11   to conduct an investigation or submit evidence of defendant's statements to the court, and

12   failed to contest any of the errors that transpired during the trial – including the jury voir

13   dire.  Petitioner also alleges that petitioner's wife contacted[2] appellate counsel several

14   times regarding the direct appeal and that appellate counsel did not request transcripts of

15   the voir dire to examine in order to place violation of public trial rights in the direct

16   appeal.  Dkt. 6 at 1-14.

17          Respondent contends that petitioner does not show that the state court's

18   decisions regarding these issues were contrary to or an unreasonable application of

19   clearly established federal law. Dkt. 19 at 30-41.

20          The primary question when reviewing a claim of ineffective assistance of counsel

21   under the AEDPA is not whether counsel's representation was deficient, or whether the

22

23          [2] Petitioner does not explain why this contact is linked to the ineffective counsel

24   claim.

1   state court erred in analyzing the claim, but whether the state court adjudication of the

2   claim was unreasonable.  *Landrigan*, 550 U.S. at 472-473.  Because counsel has wide

3   latitude in deciding how best to represent a client, review of counsel's representation is

4   highly deferential and is "doubly deferential when it is conducted through the lens of

5   federal habeas."  *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003).

6        To show ineffective assistance of counsel, a petitioner must satisfy a two-part

7   standard. First, the petitioner must show counsel's performance was so deficient that it

8   "fell below an objective standard of reasonableness."  *Strickland v. Washington*, 466 U.S.

9   668, 686 (1984). Second, the petitioner must show that the deficient performance

10  prejudiced the defense so "as to deprive the defendant of a fair trial, a trial whose result is

11  unreasonable."  *Id.*  The petitioner must satisfy both prongs to prove his claim of

12  ineffective assistance of counsel.  *Id.* at 697.

13       Under the first prong, the petitioner must specifically show "counsel made errors

14  so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by

15  the Sixth Amendment."  *Strickland*, 466 U.S. at 687.  The proper measure of attorney

16  conduct remains reasonableness under prevailing professional norms.  *Wiggins v. Smith*,

17  539 U.S. 510, 521 (2003).  To avoid the temptation to second-guess counsel's decisions,

18  counsel is "'strongly presumed to have rendered adequate assistance and made all

19  significant decisions in the exercise of reasonable professional judgment.'"  *Pinholster*,

20  131 S. Ct. at 1403 (*quoting Strickland*, 466 U.S. at 690).  The courts must "begin with the

21  premise that 'under the circumstances, the challenged action[s] might be considered

22  sound trial strategy.'"  *Id.* at 1404 (*quoting Strickland*, 466 U.S. at 689).

23

24

1    Under the second prong, petitioner must prove prejudice from counsel's

2 representation. *Pinholster*, 131 S. Ct. at 1403.  It is not enough that counsel's errors had

3 "some conceivable effect on the outcome."  Rather, the petitioner must show "that, but

4 for counsel's unprofessional errors, the result would have been different." *Strickland*,

5 466 U.S. at 693-94.  "That requires a 'substantial,' not just 'conceivable,' likelihood of a

6 different result." *Pinholster*, 131 S. Ct. at 1403 (*quoting Harrington v. Richter*, 562 U.S.

7 86, 112 (2011)).

8    2.    *Exhausted Ground 2 – Ineffective Assistance of Trial Counsel*

9  a.  Ground 2, part 1: Failure to object to leading questions by the prosecutor

10    Petitioner argues that his trial counsel was ineffective because counsel failed to

11 object to leading questions by the prosecutor on direct examination. Dkt. 6 at 6.

12    The Washington Court of Appeals issued a reasoned opinion on the merits of this

13 claim; thus, this Court looks to the Washington Court of Appeal's ruling affirming the

14 trial court. *See* Dkt. 20 at Ex. 2. *See Van Lynn v. Farmon*, 347 F.3d 735, 738 (9th Cir.

15 2003). The Washington Court of Appeals held:

> Burton argues that trial counsel was ineffective for failing to object to the
> prosecutor asking leading questions on direct examination.  We disagree.
> Leading questions are ones that suggest the answer; a question that can be
> freely answered in the affirmative or negative is generally not a leading
> question.  *State v. Scott*, 20 Wn.2d 696, 698-99, 149 P.2d 152 (1944).
> Under 611(c), "Leading questions should not be used on the direct
> examination of a witness except as may be necessary to develop the
> witness' testimony."  "The trial court has broad discretion to permit
> leading questions and will not be reversed absent abuse of that discretion."
> *Stevens v. Gordon*, 118 Wn.App. 43, 55-56, 74 P.3d 653 (2003).
> Moreover, the asking of leading questions is not usually a reversible error.
> *Stevens*, 118 Wn.App. at 56. Our review of the record revealed only two
> leading questions on direct examination.  The prosecutor asked one
> witness a leading question suggesting that a witness spoke to a police
> officer about MBOW's report of sexual abuse.  The prosecutor also asked
> Karen a leading question on direct examination suggesting that a detective

questioned her about the time she kicked Burton out of the house.  It was within the trial court's discretion to permit such questions on these relatively minor details of the witnesses' testimony.  *Stevens*, 118 Wn.App. at 56.  Burton cannot show prejudice based on counsel's failure to object to these innocuous leading questions.  His claim on this point fails.

Dkt. 20 at Ex. 2 at 19-20.

Even if trial counsel's failure to object was objectively unreasonable, petitioner cannot show that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Strickland,* 466 U.S. at 694.  Thus, the state court's determination that trial counsel did not provide inadequate representation by failing to object to the prosecutor's two leading questions was neither contrary to, nor an unreasonable application of, clearly established federal law. Therefore, the Court should deny habeas relief as to this portion of petitioner's second ground for relief.

   b.  Ground 2, part 2: Failure to attempt to impeach prosecution witnesses

Petitioner argues that his trial counsel was ineffective because counsel failed to attempt to impeach prosecution witnesses with prior inconsistent statements on key elements of their testimony.  Dkt. 6 at 6.  The Washington Court of Appeals held:

Burton argues that trial counsel was ineffective for failing to impeach the State's witnesses "with their prior inconsistent statements on key elements of their testimony."  SAG at 4, 12.  Our review of the record does not reveal inconsistent statements that trial counsel failed to use to impeach the State's witnesses.  Counsel impeached the State's witnesses on a number of points.  Burton fails to apprise the court of the nature and occurrence of any error on this point and we do not consider it.

Dkt. 20 at Ex. 2, at 14.

Petitioner fails to demonstrate to this Court the nature and occurrence of any error on this point.  Trial counsel did impeach the State's witnesses on several points.  Thus,

1  the state court's determination that trial counsel did not provide inadequate representation

2  by failing to attempt to impeach the State's witnesses was neither contrary to, nor an

3  unreasonable application of, clearly established federal law. Thus, the Court should deny

4  habeas relief as to this portion of petitioner's second ground for relief.

5         c.  Ground 2, part 3: Failure to request a continuance

6         Petitioner argues that his trial counsel was ineffective because counsel

7  failed to request a continuance to investigate when "surprise" witnesses were

8  announced mid-trial by prosecution. Dkt. 6 at 6.   In regard to this claim, the

9  Washington Court of Appeals held:

10       As to the "surprise" witnesses, before the State called Beverly Spaulding,
     defense counsel requested a recess to interview Spaulding before she

11       testified, which the trial court granted.  The record does not reflect when
     Spaulding was disclosed to Burton's counsel.  Spaulding testified that

12       Karen had told her about the incident where Karen caught MBOW and
     Burton on the couch.  Defense counsel did not object to Spaulding

13       testifying but, instead, called an additional witness, who gave testimony
     that impeached Spaulding as to the incident's timing.  The record shows

14       that Burton's counsel called a witness not on his original witness list in
     response to the state calling Spaulding.  The record does not reflect that

15       counsel needed additional time to prepare a response to Spaulding's
     testimony, or that Spaulding's testimony represented any kind of unfair

16       surprise.  Burton has not overcome the strong presumption that counsel's
     performance was reasonable on this point.

17
18  Dkt. 20 at Ex. 2, at 13.

19         "Whatever the actual explanation, *Strickland* requires us to 'indulge a strong

20  presumption that counsel's conduct falls within the wide range of reasonable professional

21  assistance.' " *Id.* (*quoting Strickland,* 466 U.S. at 689). Thus, the state court's

22  determination that trial counsel did not provide inadequate representation by failing to

23  request a continuance was neither contrary to, nor an unreasonable application of, clearly

24

REPORT AND RECOMMENDATION - 28

1 │ established federal law. Thus, the Court should deny habeas relief as to this portion of

2 │ petitioner's second ground for relief.

3 │    d. <u>Ground 2, part 4: Failure to object to evidence regarding marijuana pipes</u>

4 │     Petitioner argues that his trial counsel was ineffective because counsel

5 │ failed to object to the introduction of improper 404(b) evidence regarding

6 │ "marijuana pipes." Dkt. 6 at 6.  In regard to this claim, the Washington Court of

7 │ Appeals held:

8 │    "The decision of when or whether to object is a classic example of trial
   tactics."  *State v. Madison*, 53 Wn.App. 754, 763, 770 P.2d 662 (1989).
9 │    "Only egregious circumstances, on testimony central to the State's case,
   will failure to object constitute incompetence of counsel justifying
10 │    reversal."  *Madison*, 53 Wn.App. at 763.  Although irrelevant, the brief
   testimony regarding the marijuana pipes here was not central to the State's
11 │    case.  It was a legitimate trial strategy for counsel to keep silent to avoid
   highlighting this brief, irrelevant testimony to the jury.  *In re Pers.*
12 │    *Restraint of Davis*, 152 Wn.2d 647, 714, 101P.3d 1 (2004). Burton has not
   overcome the presumption against deficient performance. His claim on
13 │    this point fails.

14 │ Dkt. 20 at Ex. 2, at 5.

15 │    The courts must "begin with the premise that 'under the circumstances, the

16 │ challenged action[s] might be considered sound trial strategy.'"  *Id.* at 1404 (*quoting*

17 │ *Strickland*, 466 U.S. at 689).  The state court found that the brief testimony was not

18 │ central to the State's case and failure to object may be considered a tactical decision to

19 │ avoid highlighting the mention of marijuana pipes.  Thus, the state court's determination

20 │ that trial counsel did not provide inadequate representation by failing to object to this

21 │ testimony was neither contrary to, nor an unreasonable application of, clearly established

22 │ federal law. Thus, the Court should deny habeas relief as to this portion of petitioner's

23 │ second ground for relief.

24 │

e. <u>Ground 2, part 5: Failure to object to redacted jail phone recordings</u>

Petitioner argues that his trial counsel was ineffective because counsel failed to object to introduction of improper 404(b) evidence contained in redacted jail phone recordings. Dkt. 6 at 6.   The Washington Court of Appeals held:

> The phone calls between Burton and Karen showed Burton attempting to formulate defenses with Karen, such as that MBOW may have obtained some of Burton's genetic material to create a false positive on her sexual assault examination, or that Burton could not have committed the alleged acts because of sexual difficulties he had.   This arguably showed consciousness of guilt, an admissible purpose under ER 404(b).  5 KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE §§ 402.4, 404.29 (5th ed. 2007).  Burton's claim on this point fails.

Dkt. 20 at Ex. 2 at 5.

The state court's determination that the phone recording evidence was not inadmissible and that trial counsel did not provide inadequate representation by failing to object to this evidence was neither contrary to, nor an unreasonable application of, clearly established federal law. Thus, the Court should deny habeas relief as to this portion of petitioner's second ground for relief.

f. <u>Ground 2, part 6: Failure to object to evidence for impeachment purposes</u>

Petitioner argues that his trial counsel was ineffective because counsel failed to object to use of improper 404(b) evidence (redacted jail phone recordings) for impeachment purposes on collateral issues. Dkt. 6 at 6.   The Washington Court of Appeals held:

> Burton argues that counsel was ineffective for failing to object when the State impeached Karen on collateral matters regarding her past statements. Extrinsic evidence on a collateral matter is not admissible to impeach a witness. *State v. Lubers*, 81 Wn.App. 614, 623, 915 P.2d 1157 (1996).
>
> Evidence is not collateral if it is independently admissible for another purpose.   *State v. Fankhouser*, 133 Wn.App. 689, 693, 138 P.3d 140

REPORT AND RECOMMENDATION - 30

(2006).  Even where collateral evidence is improperly admitted, the error is only prejudicial if it affects or presumptively affects the final results of a trial.  *State v. Allen*, 50 Wn.App. 412, 423, 749 P.2d 702 (1988).

Karen testified that she never said she would change the locks on the house.  Karen also testified that she never said she would cut off MBOW's lunch money, that she never said she would put MBOW's belongings outside "in the mold," and that she would use the child support money she received for MBOW to pay for jail phone calls to Burton.  3 RP at 238-39.  The state then recalled Detective Blankenship, who testifies that, based on jail phone recordings that had not been admitted, Karen had made contradictory statements regarding lunch money, MBOW's belongings, and child support.

The admission of the rebuttal testimony, even if collateral, did not affect the verdict, and Burton cannot show prejudice from his counsel's failure to object.  Karen's credibility was otherwise undermined through other testimony.  For example, in contrast to Karen's testimony, a co-worker of Karen's testified that Karen told her she caught Burton and MBOW on the couch and indicated that it was sexual. Moreover, Karen's credibility was not the central issue of the case.  The case turned largely on MBOW's credibility and Burton's credibility.  Burton's claim on this point fails.

Dkt. 20 at Ex. 2 at 17-18.

The state court's determination that the admission of the rebuttal testimony, even if collateral, did not affect the verdict and that Burton did not show prejudice was neither contrary to, nor an unreasonable application of, clearly established federal law. Thus, the Court should deny habeas relief as to this portion of petitioner's second ground for relief.

g.  Ground 2, part 7: Failure to object to prosecutor misconduct

Petitioner argues that his trial counsel was ineffective because counsel failed to object to the prosecutor "testifying" to the contents of certain redacted jail phone recordings, which she stated were "garbled." Dkt. 6 at 6.   The Washington Court of Appeals held:

1    Burton next argues that the prosecutor committed misconduct by
     "testifying" about the jail phone recordings contents after first calling
2    them "garbled." SAG at 9-10.  We disagree.

3    Regarding the jail recordings, the prosecutor argued, "I know they are
     garbled and they are hard to get the first time, but you will be able to take
4    them back with you." 3 RP at 374.  The prosecutor then argued that the
     recordings would show that Burton knew that MBOW had had a sexual
5    assault examination, and was attempting to formulate an innocent
     explanation why his semen might be found inside MBOW.  This argument
6    was within the prosecutor's wide latitude to argue inferences from the
     evidence.  Burton apparently argues that, by calling the calls "garbled,"
7    the prosecutor was somehow barred from arguing reasonable inferences to
     the jury about what the calls showed.  Burton is incorrect and has failed to
8    show misconduct on this point.

9  Dkt. 20 at Ex. 2, at 25.

10         The appellate court issued a reasoned opinion on the merits of the alleged

11  prosecutorial misconduct and found that the prosecutor's remarks were not

12  improper.  To this end, the Washington Court of Appeals held:

13         Burton argues that trial counsel was ineffective for failing to object to the
           prosecutor's improper remarks during closing argument and closing
14         argument rebuttal.  But as we explain below, the prosecutor did not
           commit any such misconduct.  Burton can show neither deficient
15         performance nor prejudice based on counsel's failure to object to these
           statements.

16
    Dkt. 20 at Ex. 2, at 25.

17
           The state court found no prosecutorial misconduct; therefore, failure to object to

18
    the prosecutor's statements was not ineffective.  Petitioner has failed to demonstrate that

19
    the state court's determination was contrary to, or an unreasonable application of, clearly

20
    established federal law. Thus, the Court should deny habeas relief as to this portion of

21
    petitioner's second ground for relief.

22
           h.    Ground 2, part 8: Failure to Object to State's Exhibit No. 22

23

24

REPORT AND RECOMMENDATION - 32

1     Petitioner next argues that his trial counsel was ineffective because counsel failed

2 to object to introduction of State's Exhibit No. 22 – a color photocopy of a light gray

3 robe. Dkt. 6 at 7.   The Washington Court of Appeals held:

4         Burton argues that trial counsel was ineffective for failing to object to the
          photocopy of his robe or the related DNA evidence against him and for
5         failing to move for a mistrial based on that evidence.  We disagree.

6         At trial, the State admitted a photocopy of a picture of the robe on which
          the State's expert had found Burton and MBOW's DNA.  Burton claimed
7         the photocopy did not appear to show one of his robes because it looked
          gray, while his robes were all dark blue.  But this does not establish that
8         the photograph or the robe were inadmissible.  Under ER 901(a), "The
          requirement of authentication or identification as a condition precedent to
9         admissibility is satisfied by sufficient evidence to support a finding that
          the matter in question is what its proponent claims."  Under ER 901(b)(1),
10        evidence may be identified by a witness with knowledge that the item is
          "what it is claimed to be."  The State laid the foundation for admitting the
11        photocopy. The State's expert, who had knowledge of the robe that she
          analyzed, testified that the photocopy was an accurate depiction of the
12        robe where she found the DNA. There were no grounds for trial counsel to
          object to the photocopy.  Counsel was not ineffective for failing to object
13        or move for a mistrial and Burton's claim on this point fails.

14 Dkt. 20 at Ex. 2, at 18.

15     Petitioner has failed to demonstrate that the state court's determination was either

16 contrary to, or an unreasonable application of, clearly established federal law. Thus, the

17 Court should deny habeas relief as to this portion of petitioner's second ground for relief.

18        i.  Ground 2, part 9: Failure to respond to prosecutor's objection

19     Petitioner argues that his trial counsel was ineffective because counsel failed to

20 give a meaningful response to the prosecutor's objection to defendant's answer during

21 cross examination. Dkt. 6 at 7.   The Washington Court of Appeals held:

22        Burton argues that trial counsel was ineffective for failing to give a
          "meaningful response" when the prosecutor objected to Burton testifying
23        about "what [MBOW's] father had been doing to her."  SAG at 14; 3 RP
          320.  We disagree.

24

REPORT AND RECOMMENDATION - 33

During Burton's testimony, he stated that he believed MBOW's accusations against him were due to transference "from what her father had been doing to her." 3 RP at 320. The State objected and defense counsel offered no response. The trial court sustained the objection.

Although there was no evidence or offer of proof on the issue, it appears that Burton was trying to testify about some alleged sexual misconduct by MBOW's father against her. The trial court had earlier granted the State's motion in limine to exclude any reference to MBOW's sexual history, except for certain limited information that was relevant to her sexual history (or lack thereof) with Burton. Trial counsel was not ineffective for abiding by this motion in limine and not offering any response to the State's objection.

Dkt. 20 at Ex. 2, at 18-19.

Petitioner has failed to demonstrate that the state court's determination that trial counsel was not ineffective for abiding by the motion in limine was either contrary to, or an unreasonable application of, clearly established federal law. Thus, the Court should deny habeas relief as to this portion of petitioner's second ground for relief.

j.   Ground 2, part 10: Failure to object to nightstand picture

Petitioner argues that his trial counsel was ineffective because counsel failed to object to introduction of improper 404(b) evidence – a picture of Karen Burton's nightstand drawer containing sex toys and condoms. Dkt. 6 at 7.  The Washington Court of Appeals held:

The State also admitted a photograph the police had taken during execution of the search warrant.  The police had photographed the contents of a nightstand in Burton's bedroom, which included sex toys and condoms.

The sex toys and condoms evidence were probative of the crimes charged and corroborated testimony.  MBOW testified that Burton used one of Karen's sex toys on her.  The photograph supported MBOW's testimony because it proved that Karen possessed sex toys.  MBOW also testified that Burton "had a tendency not to use a condom" with her, permitting the inference that Burton used a condom at least some of the time. 2 RP at

110.   Evidence that there were condoms in Burton's bedroom supports such an inference.   Burton cannot show that any objection would have been successful, thus he cannot show defective performance.   Burton's claim on this point fails as well.

Dkt. 20 at Ex. 2, at 16.

Because counsel has wide latitude in deciding how best to represent a client, review of counsel's representation is highly deferential and is "doubly deferential when it is conducted through the lens of federal habeas." *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003).  The burden is on petitioner to show that any objection would have been successful.  Petitioner has failed to demonstrate that the state court's determination, that trial counsel was not ineffective for failing to object to the picture of the nightstand, was contrary to, or an unreasonable application of, clearly established federal law. Thus, the Court should deny habeas relief as to this portion of petitioner's second ground for relief.

Ground 2, part 11: Failure to object to prosecution remarks

Petitioner argues that his trial counsel was ineffective because counsel failed to object to prosecution's remarks during the state's closing and rebuttal arguments. Dkt. 6 at 7.  The Washington Court of Appeals held:

Burton argues that trial counsel was ineffective for failing to object to the prosecutor's improper remarks during closing argument and closing argument rebuttal.   But as we explain below, the prosecutor did not commit any such misconduct.   Burton can show neither deficient performance nor prejudice based on counsel's failure to object to these statements.

Dkt. 20 at Ex. 2, at 14-15.

With regard to *Strickland's* first prong, the Ninth Circuit has observed that, for strategic reasons, "for example, many trial lawyers refrain from objecting during closing argument to all but the most egregious misstatements by opposing counsel on the theory

that the jury may construe their objections to be a sign of desperation or

hypertechnicality." *United States v. Molina,* 934 F.2d 1440, 1448 (9th Cir. 1991).

"Whatever the actual explanation, *Strickland* requires us to 'indulge a strong presumption

that counsel's conduct falls within the wide range of reasonable professional assistance.' "

*Id.* (quoting *Strickland,* 466 U.S. at 689). If a prosecutor makes statements to the jury

during closing argument that he knows are false or has strong reason to doubt, with

respect to material facts on which the defendant's defense relied, this is misconduct.

*United States v. Reyes,* 577 F.3d 1069, 1078 (9th Cir. 2009).  This is not the case here.

The state court found that the prosecutor did not commit any such misconduct.  *Id.* at 21.

Furthermore, closing arguments are not evidence and ordinarily carry less weight with

the jury than the court's instructions.  *Boyde v. California*, 494 U.S. 370, 384 (1990);

*Houston v. Roe*, 177 F.3d 901, 909 (9th Cir. 1999).

Petitioner has failed to demonstrate that the state court's determination was

contrary to, or an unreasonable application of, clearly established federal law. Thus, the

Court should deny habeas relief as to this portion of petitioner's second ground for relief.

l.  Ground 2, part 12: counsel knowingly misstated facts during closing argument

Petitioner argues that his trial counsel was ineffective because counsel knowingly

misstated facts during closing arguments.  Dkt. 6 at 7.  The Washington Court of Appeals

held:

> Burton argues that his trial counsel misstated facts during closing
> argument.  The record does not support this claim.
>
> To support this argument, Burton cites a page of closing argument where
> counsel discussed the incident when Karen caught MBOW and Burton on
> the couch, saying that the incident "concerned [Karen] greatly," and that
> Karen kicked Burton out of the house. 3 RP at 365.  Burton says Karen's
> testimony is inaccurate, but Burton's own testimony was that Karen

1    reacted by saying, "Oh, hell no," suggesting that she was in fact concerned
     by the incident.  3 RP at 292.  Defense counsel made no misstatement on
2    this point.  And to the extent counsel's argument could be characterized as
     a misstatement of the evidence, Burton cannot show prejudice based on
3    such a slight inaccuracy.

4    Dkt. 20 at Ex. 2, at 15.

5        The state court's determination that even if trial counsel did misstate the facts at

6    closing argument (which it found had not happened), Burton could not show prejudice,

7    was neither contrary to, nor an unreasonable application of, clearly established federal

8    law. Thus, the Court should deny habeas relief as to this portion of petitioner's second

9    ground for relief.

10       m.   Ground 2, part 13: counsel failed to object to prosecutor's examination of Ms.
             Burton

11       Petitioner argues that his trial counsel was ineffective because counsel failed to

12   object to the prosecutor treating Ms. Burton as a "hostile witness" during direct

13   examination, despite the trial court's decision on the matter.  Dkt. 6 at 7.   The

14   Washington Court of Appeals held Ms. Burton's credibility was undermined through

15   other testimony and that her credibility was not the central issue of the case.  Dkt. 20, Ex.

16   2 at 17-18.  The state court concluded that petitioner failed to show prejudice from his

17   counsel's failure to object when the State impeached Ms. Burton on collateral matters

18   regarding her past statement.  *Id.*

19       As discussed above (ground 2, part 6), Karen Burton's credibility was otherwise

20   undermined through other testimony and her credibility was not the central issue of the

21   case.  The state court's determination that trial counsel was not ineffective for failing to

22   object to the prosecutor's examination of Ms. Burton, and that petitioner failed to show

23   resulting prejudice, was neither contrary to, nor an unreasonable application of, clearly

24

1    established federal law. Thus, the Court should deny habeas relief as to this portion of

2    petitioner's second ground for relief.

3          n.   Ground 2, part 14: counsel failed to advise of an *Alford* plea

4          Petitioner argues that his trial counsel was ineffective because counsel failed to

5    advise him of the possibility of entering an *Alford* plea.  Dkt. 6 at 7.  The state supreme

6    court, in ruling on petitioner's consolidated personal restraint petition, applied the correct

7    review standard, *State v. McFarland*,[3] which,  like *Strickland*, utilizes a deficient

8    performance and resulting prejudice test.  Dkt. 20, Ex. 17 at 4-5. The Washington

9    Supreme Court held:

> Mr. Burton essentially faults trial counsel for inadequate investigation and
> preparation; mishandling juror challenges; and failing to present
> potentially exculpatory evidence, object to allegedly improper testimony
> and arguments, challenge allegedly inadmissible evidence, and advise Mr.
> Burton of the possibility of entering an *Alford*[4] plea. But Mr. Burton fails
> to provide admissible and material evidence suggesting that trial counsel
> was deficient in any meaningful way, or more critically, that but for the
> alleged deficiencies there was a reasonable probability that the result
> would have been different.  *See McFarland*, 127 Wn.2d at 334-35. In
> particular, Mr. Burton fails to demonstrate there is evidence that the State
> would have been interested in an *Alford* plea had one been proposed, or
> that he would have entered into such a plea agreement.

16   Dkt. 20, Ex. 17 at 4.

17          The state court  determed that Burton failed to provide evidence that his counsel's

18   performance was deficient.  Furthermore, petitioner failed to provide evidence that but

19   for those alleged deficiencies there was a reasonable probability the result of his trial

20   would have been different.  Therefore, the state's determinations were neither contrary to,

21   nor an unreasonable application of, clearly established federal law. Further, the state

---

[3] *State v. McFarland*, 127 Wn.2d 322, 334-35 (1995).
[4] *North Carolina v. Alford*, 400 U.S. 25 (1970).

1   court's determination that petitioner failed to demonstrate there was evidence that the

2   State would have been interested in an *Alford* plea if it was proposed, or that petitioner

3   would have entered into such a plea with the State, was neither contrary to, nor an

4   unreasonable application of, clearly established federal law. Thus, the Court should deny

5   habeas relief as to this portion of petitioner's second ground for relief.

6            o.   Ground 2, part 15: counsel failed to conduct investigation

7            Petitioner argues that his trial counsel was ineffective because counsel was

8   given substantial "evidence details of the statement made against the defendant

9   and conducted no investigation nor submitted them to the court."   Dkt. 6 at 7.

10  The Washington Supreme Court stated, in relevant part:

11             Mr. Burton essentially faults trial counsel for inadequate investigation and
               preparation; …. But Mr. Burton fails to provide admissible and material
12             evidence suggesting that trial counsel was deficient in any meaningful
               way, or more critically, that but for the alleged deficiencies there was a
13             reasonable probability that the result would have been different.   *See*
               *McFarland*, 127 Wn.2d at 334-35.
14
    Dkt. 20, Ex. 17 at 4.
15
            It is well established that counsel has a duty to make reasonable investigations or
16
    to make a reasonable decision that a particular investigation is unnecessary. *Strickland*,
17
    466 U.S. at 691. A lawyer's performance is deficient if the lawyer fails to investigate
18
    adequately, or fails to introduce evidence that demonstrates petitioner's factual
19
    innocence.  If these failures undermine the Court's confidence in the verdict, then the
20
    lawyer's representation is inadequate. *See, e.g., Avila v. Galaza*, 297 F.3d 911, 919 (9th
21
    Cir. 2002) (holding that counsel's failure to investigate evidence that defendant's brother
22
    was the shooter constituted deficient performance; *Sanders v. Ratelle*, 21 F.3d 1446, 1457
23
    (9th Cir. 1994) (finding defense counsel's performance deficient because of failure to
24

1 investigate or introduce at trial evidence implicating the client's brother); *Foster v.*

2 *Lockhart,* 9 F.3d 722 (8th Cir. 1993) (holding assistance was ineffective because defense

3 attorney refused to investigate and present evidence that defendant in a rape trial was

4 impotent and physically incapable of committing the crime as the accuser testified).

5         Petitioner does not indicate what evidence was not investigated that would have

6 made a difference in the outcome of his case.  The state court's determination that trial

7 counsel was not ineffective for alleged inadequate investigation, and that petitioner could

8 not show prejudice, was neither contrary to, nor an unreasonable application of, clearly

9 established federal law. Thus, the Court should deny habeas relief as to this portion of

10 petitioner's second ground for relief.

11         p.  Ground 2, part 16: counsel failed to contest trial errors and voir dire

12         Petitioner argues that his trial counsel was ineffective because counsel failed to

13 contest any of the errors that transpired during the trial – including the jury *voir dire*.

14 Dkt. 6 at 7. Petitioner argues in sub-part(a) that during general questioning of the jury

15 *voir dire*, potential jurors were asked if the defendant was innocent until proven guilty or

16 guilty until proven innocent. *Id.* at 8. Two potential jurors stated that the defendant would

17 have to prove his innocence. *Id.* One of those two became the jury foreperson despite

18 three unused defense preemptory challenges. *Id.* Petitioner claims that he asked his

19 counsel to have that person removed, but trial counsel refused, which petitioner argues

20 amounted to ineffective counsel. *Id.* Petitioner argues in sub-part (b) that 19 potential

21 jurors were interviewed in a closed courtroom regarding their jury questionnaire

22 responses; petitioner further argues in sub-part (c) that potential juror #67 jumped up and

23 yelled "End the cycle of abuse now!" *Id.*  Petitioner asked trial counsel what could be

24

done about that. *Id.*  Trial counsel responded "Don't worry she won't get on the jury." *Id.*

Dkt. 6 at 8.  Petitioner argues trial counsel was ineffective for these reasons.

Respondent argues that based on transcripts, the jury foreperson did not make any

incorrect statements on the burden of proof. Dkt. 19 at 40-41.  Also, the records show that the

juror with the comments "End the cycle of violence now," did not serve on the jury. Dkt. 20,

Ex. 15, Appendix B, at 217, Appendix C, Panel Random List at 3.

The Washington Supreme Court stated:

> Mr. Burton also asserts that certain jurors who served on the jury stated during *voir dire* that a criminal defendant is guilty until proven innocent, and that one of these jurors became the jury foreperson.  He also claims that a juror made a prejudicial exclamation about ending "the cycle of violence."  But the record of *voir dire* shows that jurors who made questionable statements on the burden of proof and the cycle of violence were excused, and that the juror who was eventually selected as foreperson made no inappropriate or prejudicial statements in *voir dire*. Mr. Burton's claim on this issue is also frivolous.

Dkt. 20, Ex. 17 at 3.

In regard to petitioner's claim that defense counsel failed to contest that 19

potential jurors were interviewed in a closed courtroom, the supreme court determined:

> Mr. Burton's claim of ineffective assistance of appellate counsel is linked to his public trial claim.  …. But Mr. Burton fails to show that a closure took place.  A transcript of jury *voir dire* produced by the State indicates that all individual juror interviews concerning sensitive topics took place in open court, with the venire waiting elsewhere.

Dkt. 20, Ex. 17 at 2.

Petitioner has not demonstrated that the state court's determination was was either

contrary to, or an unreasonable application of, clearly established federal law.

Thus, the Court should deny habeas relief as to this portion of petitioner's second

ground for relief.

*Ground 4- Ineffective Assistance of Appellate Counsel*

1     Petitioner further claims that appellate counsel was ineffective in two ways.  First,

2  that both petitioner and his wife contacted appellate counsel several times regarding the

3  direct appeal. Dkt. 6 at 11.  Petitioner alleges Karen Burton called several times regarding

4  "public trial" rights and petitioner sent letters to counsel requesting missing portions of

5  trial transcripts.  *Id.*  Second, appellate counsel did not request transcripts of the *voir dire*

6  to examine in order to place violation of public trial rights in the direct appeal.

7  Additionally, petitioner argues that appellate counsel was ineffective by only sending

8  petitioner a working copy of trial transcripts, but none of the other requested materials

9  from his trial.  *Id.*

10     Claims of ineffective assistance of counsel on appeal are reviewed under a

11  deferential standard similar to that established for trial counsel as set forth in *Strickland*.

12  *See Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Smith v. Murray*, 477 U.S. 527, 535

13  (1986). Under that standard, petitioners challenging their appellate counsel's performance

14  must demonstrate (1) counsel's performance was unreasonable, which in the appellate

15  context requires a showing that counsel acted unreasonably in failing to discover and

16  brief a meritorious issue, and (2) a reasonable probability that, but for counsel's failure to

17  raise the issue, the petitioner would have prevailed on his appeal. *Smith*, 528 U.S. at 285-

18  86; *see also Wildman v. Johnson*, 261 F.3d 832, 841-42 (9th Cir. 2001); *Morrison v.*

19  *Estelle*, 981 F.2d 425, 427 (9th Cir. 1992); *Miller v. Keeney*, 882 F.2d 1428, 1433-34 (9th

20  Cir. 1989).

21     Respondent argues that the state courts adjudicated and rejected Burton's

22  ineffective assistance of appellate counsel's claims on the merits. Dkt. 19 at 33-34.

23  Respondent further argues that petitioner does not cite to any Supreme Court precedent

24

1   that would hold, under the circumstances similar to the ones here, that appellate counsel

2   was ineffective. *Id.* at 34.

3          The state court concluded that petitioner's claims were linked to his claims of the

4   alleged irregularities during the *voir dire*.  Dkt. 20, Exhibit 17 at 2.

5          Petitioner fails to develop this claim by explaining to this Court how his (and his

6   wife's) calls to appellate counsel or getting a working copy of trial transcripts is

7   "ineffective assistance."   The state court's determination that appellate counsel was not

8   ineffective for errors alleged during jury *voir dire* (and that Burton's allegations were

9   frivolous) was based on an analysis of the *voir dire* transcripts, and as previously set forth

10  above, was neither contrary to, nor an unreasonable application of, clearly established

11  federal law. Thus, petitioner has failed to demonstrate how having additional trial

12  materials would have made any difference in the outcome of his appeal.  Thus, the Court

13  should deny habeas relief as to both portions of petitioner's fourth ground for relief.

14      *3.   Ground 8-Cumulative Error*

15         Petitioner argues for his cumulative error claim that there are sufficient procedural

16  errors and constitutional violations that warrant dismissal of his conviction.  Dkt. 6 at 14.

17  Respondent argues that petitioner properly exhausted his cumulative error claim, but only

18  to the extent the underlying claims are themselves properly exhausted. Respondent

19  concedes the Ninth Circuit has determined that the "cumulative error" concept is based

20  upon clearly established federal law, *Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007),

21  but believes *Parle* was wrongly decided. Respondent asserts, citing Eighth Circuit case

22

23

24

1  law,[5] that the Supreme Court has not clearly established cumulative error as a ground for

2  habeas corpus relief.

3        "Although no single alleged error may warrant habeas corpus relief, the

4  cumulative effect of errors may deprive a petitioner of the due process right to a fair

5  trial." *Karis v. Calderon*, 283 F.3d 1117, 1132 (9th Cir. 2002) (*citing Ceja v. Stewart*, 97

6  F.3d 1246, 1254 (9th Cir. 1996)).  If the cumulative effect of the errors was prejudicial, it

7  may entitle petitioner to habeas relief. *Ceja*, 97 F.3d at 1254 (*citing Mak v. Blogdett*, 970

8  F.2d 614, 622 (9th Cir. 1992)).

9        The Ninth Circuit Court has ruled that "[e]ven if no single error were[sic]

10 sufficiently prejudicial, where there are several substantial errors, 'their cumulative effect

11 may nevertheless, be so prejudicial as to require reversal.'" *Killian v. Poole*, 282 F.3d

12 1204, 1211 (9th Cir. 2002) (*quoting U.S. v. de Cruz*, 82 F.3d 856, 868 (9th Cir. 1996));

13 *see Sims v. Brown*, 425 F.3d 560 (9th Cir. 2005).

14       Respondent concludes that although the Court is bound by Ninth Circuit precedent,

15 petitioner's cumulative error claim must fail.  Dkt. 19 at 42.  Respondent asserts petitioner

16 cannot show that any one of his properly exhausted claims constitutes prejudicial

17 constitutional error, therefore he cannot show the combined effect of the claims amounts to

18 cumulative error.  Dkt. 19 at 42-43.

19       The Washington Court of Appeals also denied the claim, providing a similar

20 explanation:

21     Burton argues that cumulative error denied him the right to a fair trial.
   The cumulative error doctrine applies when several errors occurred at the
22     trial court that would not merit reversal standing alone, but in aggregate
   effectively denied the defendant a fair trial.  *State v. Hodges*, 118

23 ───────────────────

24     [5] *Middleton v. Roper*, 455 F.3d 838, 851 (8th Cir. 2006)

1    Wn.App.668, 673-74, 77 P.3d 375 (2003). Burton has shown only that the
     trial court committed harmless error by sentencing without findings of fact
2    or conclusions of law and that a condition in his sentence was erroneous.
     Burton has shown no other error.  He has not shown any accumulation of
3    error, thus his argument fails.

4    Dkt. 20, Ex. 2 at 28.

5         Thus, the Court recommends that this claim also be denied.

6                     **CERTIFICATE OF APPEALABILITY**

7         Petitioner is seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a

8    district court's dismissal of the federal habeas petition only after obtaining a certificate of

9    appealability (COA) from a district or circuit judge.  A certificate of appealability may

10   issue only if petitioner has made "a substantial showing of the denial of a constitutional

11   right."  *See* 28 U.S.C. § 2253(c)(2).  Petitioner satisfies this standard "by demonstrating

12   that jurists of reason could disagree with the district court's resolution of his

13   constitutional claims or that jurists could conclude the issues presented are adequate to

14   deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327

15   (2003) (*citing Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Pursuant to this standard,

16   this Court concludes that petitioner is not entitled to a certificate of appealability with

17   respect to this petition.

18                            **CONCLUSION**

19        As discussed above, petitioner has failed to show he is entitled to relief on the

20   grounds raised in his petition. Thus, the Court recommends his petition be denied.

21   Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

22   fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R.

23   Civ. P. 6.  Failure to file objections will result in a waiver of those objections for

24

purposes of *de novo* review by the district judge.  *See* 28 U.S.C. § 636(b)(1)(C).

Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed to

set the matter for consideration on **August 19, 2016**, as noted in the caption.

　　　　Dated this 26th day of July, 2016.

J. Richard Creatura
United States Magistrate Judge